UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CRIMINAL CASE NO: 22-CR-00011-GFVT

UNITED STATES OF AMERICA                                              PLAINTIFF

v.

SENTENCING MEMORANDUM

CHARLES CRAWFOR                                                      DEFENDANT

*****

Comes the Defendant, Charles Crawford, by counsel, and for his Sentencing Memorandum, hereby states as follows:

INTRODUCTION

Mr. Crawford currently stands before the Court after taking responsibility and pleading guilty to one count of Employing, Using, Persuading, Inducing, Enticing and Coercing a Minor to Engage in Sexually Explicit Conduct for the Purpose of Producing a Visual Depiction of that Conduct in violation of 18 U.S.C. §2251(a).  Mr. Crawford hereby submits this Sentencing Memorandum for the Court's consideration and in support of a variance from the Guideline recommendation of 360 months.

WITHDRAWAL OF SUBSTANTIVE OBJECTIONS TO PRESENTENCE REPORT

After discussing the pending objections that would impact the guideline calculations and Probation's response to said objections with Counsel, Mr. Crawford has decided to withdraw those objections and instead to focus some of those sentencing arguments towards his request for a variance pursuant to 18 U.S.C §3553(a).  Therefore, there are no longer any unresolved objections

to the Report that effect his guideline range and those arguments are instead used to support a variance.

18 U.S.C. §3553(a)

Without going into the details of the offense conduct due to the public nature of this Memorandum, there were three very short videos found on Mr. Crawford's Vivitar camera. Two of the videos were less than two minutes and the other video was approximately 1 second in length. There was no evidence that these videos were ever downloaded to any type of site for the purposes of sharing the videos with others. It does appear that the videos were limited to Mr. Crawford's own use.

When Mr. Crawford was arrested and during his initial interview with police, he had a methamphetamine reaction that caused him to have a seizure. He had to be taken the hospital to receive treatment. Mr. Crawford used methamphetamine extensively during this time. During conversations with Counsel, he has trouble believing that he could do something like this. He has no history of any type of sexual crimes, but whatever mental restraints he had were warped by his heavy use of methamphetamine. He will state himself that meth is a bad drug and does a lot to destroy natural inhibitions. Regardless he places blame on himself, but does want the Court to know that his actions were performed under the influence of this dangerous drug.

Although Mr. Crawford has withdrawn his objection to the +4 increase in his guidelines pursuant to U.S.S.G. 2G2.1(b)(4)(A), he states that his actions were not to cause pain to the child or for her to suffer humiliation. As set forth in *United States v. Corp*, 668 F.3d 379 (6th Cir. 2012) images that portray the penetration of a prepubescent child is inherently sadistic. In the case at bar only one of the videos show penetration. However, based on case law and the inherent nature of penetration of child, the application of this enhancement does not appear to be one that is a matter

of degree. However, for purposes of a variance argument, it is argued that regardless of whether the videos show only slight penetration of the labia of the child or not, she was asleep. *See* Paragraphs 12 and 13 of the PSR. It is hard to see how someone who is sleeping is being caused pain when the activity does not appear to even wake the child.

There is no doubt that the crime committed by Mr. Crawford deserves punishment and he accepts this. However, he would ask this Court to consider whether the sexual exploitation of minors guideline creates an overly harsh punishment in his particular case.

Mr. Crawford is 53 years-old and he has a criminal history category of VI. In relation to the case at bar, his criminal history is replete with drug convictions, theft convictions, attempted robbery and even complicity to burglary. However, what is not seen is any type of sexual offense crime whether related to children or adults. To be as old as he is, this does lend credence that his actions in this case were out of character and fueled by an uncontrolled addiction to a dangerous drug that lowers one's inhibitions.

Again, Mr. Crawford has withdrawn his objection to the Chapter Four Enhancement that has labeled him a dangerous and repeat sex offender subject to an additional 5 levels. However, he does state that his arguments against this imposition of additional levels is relevant to his request for a variance and that the Court should not have to completely defer to the Commission's (actually Congress) definition of a pattern of activity in UUSG 4B1.5(b)(1) application note 4. This guideline is found under Chapter 4 entitled Criminal History and Criminal Livelihood. In the introductory commentary to the chapter it states "a defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment." Mr. Crawford is a first-time offender. When it comes to the risk of recidivism for a sex offense, the nature (i.e. incest) and his age are also relevant. *See also United States v. Brattain,* 539 F.3d 445,

3

448 (6th Cir. 2008) (stating that there may be a compelling argument for defendants who commit incense with only one minor have much lower rates of recidivism)

Offenders that commit incest have lower risk of re-offending than do other types of sex offenders. The Department of Justice Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART) has published information about recidivism. *See* Sex Offender Management Assessment and Planning Initiative, Chapter 5 by Roger Przbylski at smart.ojp.gov. In Mr. Przbylski's report at Table 2, it noted the recidivism rates for those who molest boys, those who molested girls and those who committed incest. The table is provided below for the Court's convenience:

**Table 2. Sexual Recidivism Rates of Child Molesters**

| Type of Offense | Recidivism Rate, by Follow-up Period (%) | | |
| --- | --- | --- | --- |
| | 5 years | 10 years | 15 years |
| Molested boys | 23.0 (N=315) | 27.8 (N=105) | 35.4 (N=95) |
| Molested girls | 9.2 (N=766) | 13.1 (N=218) | 16.3 (N=208) |
| Committed incest | 6.4 (N=416) | 9.4 (N=73) | 13.2 (N=69) |

Recidivism estimates are based on new convictions and charges. Source: Harris & Hanson (2004).

As the table above shows, there is not only a lesser rate of recidivism for offenders who molest girls, but it is even lower for those who committed incest.

4

Furthermore, Mr. Crawford's age is also relevant to his recidivism rate. In the US Sentencing Commission entitled "Recidivism of Federal Offenders Released in 2010" the commission states "the lowest rearrest rates were for offenders ages 60 and older." *See* Recidivism of Federal Offenders Released in 2010 published in September 2021 at page 24 and found at ussc.gov. Mr. Crawford has the highest criminal history category (but no prior sex crimes). Age and prior criminal history are good predictor of re-offending. "Considering CHC VI offenders in that study, 37.7 percent of offenders aged 60 and older were rearrested, compared to 89.7 percent of offenders younger than 30 years of age." Id. at p.30. Mr. Crawford will likely be anywhere from 75-80 years old upon his release, if he does not die in prison first. Even though the nature of any sex crime against a child is awful, Mr. Crawford's age, the victim's sex and her relationship to him, he argues that the guideline range of 360 to life is overkill in his case. Yes, his crime deserves sever punishment, but the guidelines in his case already begin level at 32. In his criminal history category, it only takes five more additional levels to face a range of 360 to life.

Courts can consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards." *Kimbrough,* 552 U.S. at 108–09; *Rita*, 551 U.S. at 349–50. When operating within that institutional role, the Sentencing Commission "has the capacity courts lack" and can " 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.' " *Kimbrough,* 552 U.S. at 109 (quoting *United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir.2007). In formulating the Guidelines, the Commission developed and used data on past practices and recidivism. *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 72–73

(November 2004), available at http:// www.ussc.gov/ 15_year/15_year_study_full .pdf ("Fifteen–Year Assessment"); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at 96; *Gall,* 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Based on these sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. See Fifteen–Year Assessment at 14. Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range. *See Kimbrough,* 552 U.S. at 109.

However when Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives .' " *Id.* (quoting *Rita,* 551 U.S. at 350); *see also Gall,* 552 U.S. at 46 n. 2. (noting that not all Guidelines are tied to empirical evidence).  The Guidelines for child exploitation offenses were not developed under the statistical approach, but were promulgated, for the most part, in response to statutory directives. Child Porn. History Rep't at 6 (stating "Congress has specifically expressed an intent to raise penalties associated with certain child pornography offenses several times through directives to the Commission and statutory changes aimed at increasing the guideline penalties and reducing the incidence of downward departures for such offenses" and "[the Commission] must bow to the specific directives of Congress"); *see, e.g.,* U.S.S.G.App. C, Vol. I, Amends. 435 & 436 (Nov. 27 1991), 537 & 538 (Nov. 1, 1996); Vol. II, amend. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amend. 651 (Oct. 27, 2003), 664

6

(Nov. 1, 2004); United States Sentencing Commission, *Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties* (June 1996), available at *http://www.ussc.gov/reports.htm* (last visited February 22, 2010). Furthermore for a more in depth analysis of Congress' interference with the Commission's basic function see *United States v. Howard*, 2010 WL 749782 (Neb. D. 2010) (where the District Court continues this analysis all the way to the Protect Act).

What is clear is that over and over again Congress has meddled with the Commission's job. In *United States v. Paauwe* 968 F.3d 614, 619 (6th Cir. 2020), the Court commented on application note 4(B)(1) interpreting the meaning of "pattern of activity" raises interesting questions because apparently Congress made this amendment itself. Congress in both enacting the law and interpreting the law may very well violate the separation of powers. Crawford is not making this Constitutional argument for the purpose of saying that the note is unconstitutional, but simply to argue that such a guideline which is not based on empirical data but a directive from Congress does not deserve the deference that a court would normally give to other guidelines.

There are also certain aspects of his crime that lead to punishment separate from the loss of liberty that he will face. It may not seem quite right to some, considering the nature of his crime, but the truth is Mr. Crawford loved both his children. However, he has lost all parental rights. He also lost his wife that he had been married to since 2009. Not only this, but there is societal ostracization and estrangement from other family members. He is now a man without a family, home, or much to look forward to in the future. There are many ways that he will continue to pay for his crime besides prison.

Mr. Crawford does not dispute that there are reasons to support a lengthy sentence under §3553(a) such as to reflect the seriousness of the offense and to deter others. However, in Mr.

Crawford's case, providing him with needed help such a drug treatment and sex offender treatment programs will also be of use to Mr. Crawford and to deter him. Therefore, he would ask the Court to recommend that participate in both a drug treatment and sex offender program while incarcerated. Mr. Crawford, quite naturally, is suffering mentally as well and would also ask to get mental health treatment.

## CONCLUSION

Therefore, based on the above and the PSR, Mr. Crawford requests that Court sentence him below recommended guideline minimum of 360 months and the statutory maximum of 30 years and to consider a sentence closer to 25 years.

Respectfully submitted,

s/ Jeffrey C. Rager_____
Jeffrey C. Rager
Kinkead & Stilz, PLLC
301 E. Main Street, Suite 801
Lexington, KY 40507

**CERTIFICATE OF SERVICE**

The foregoing Notice was served upon AUSA Erin Roth and all other parties through the CM/ECF system and through direct email and to all other parties on this the 4th day of August, 2023.

s/ Jeffrey C. Rager_____